IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **NORTHSTAR FUNDING GROUP INC.,**<br><br>**Plaintiff,**<br><br>vs.<br><br>**FEDERAL DEPOSIT INSURANCE CORPORATION and DOUGLAS M. DURBANO,**<br><br>**Defendants.** | **MEMORANDUM DECISION AND ORDER GRANTING STAY**<br><br>Case No.  1:09CV79DAK |

This matter is before the court on a Motion for Stay Pending Compliance With or Exhaustion of the Administrative Process Required by FIRREA brought by Defendant Federal Deposit Insurance Corporation ("FDIC") as receiver for America West Bank ("AWB").  The court scheduled a hearing on this motion for November 12, 2009.  At the hearing, Defendant FDIC was represented by Stephen Wood, and Defendant Douglas Durbano was represented by George Pratt and Jessica Wilde.  Although counsel for Plaintiff briefed the motion, no counsel appeared on behalf of Plaintiff at the hearing.  Because no counsel appeared for Plaintiff, the court only allowed limited argument as to whether the Motion to Stay should apply to all defendants or only the FDIC.   The court then advised the parties that it would issue a ruling based on the parties' briefing of this issue.  After carefully considering the memoranda and materials submitted by the parties as well as the law and facts relevant to the pending motions, the court renders the following Memorandum Decision and Order.

## BACKGROUND

This case originated in Utah state court and was removed to federal court after the FDIC was appointed as the receiver for AWB.  This matter arises from a trustee's sale of real property in Eden, Utah (the "Property").  On October 31, 2006, AWB loaned approximately $1,840,358.00 to Kings Cross Development LLC, with a  first deed of trust against the Property securing the construction loan.  Subsequently, on January 25, 2007, Northstar Funding Group, Inc., loaned $270,000.00 to Kings Cross, with a second deed of trust against the Property securing the loan.  Kings Cross, however, failed to make payments on the AWB loan, failed to pay the property taxes, and allowed mechanic's liens to be recorded against the Property.

Defendant Douglas M. Durbano, in his capacity as trustee under the AWB trust deed, initiated a trust deed foreclosure on the Property.  On June 3, 2008, Durbano conducted the Property's trustee's sale.  At the sale, Durbano sold the Property in fifteen separate parcels.  On behalf of AWB, Durbano successfully bid $2,320,000 for fourteen of the parcels, and sold the fifteenth parcel to a third party for $10,000, which was collected at the sale.

On September 3, 2008, AWB filed the instant lawsuit in Utah state court against Kings Cross and related individuals for breach of contract and other claims.  On October 6, 2008, Northstar also filed suit in state court asserting claims against AWB and Durbano for, among other things, a right to excess proceeds from the trustee's sale.  On January 13, 2009, the state court, in which both actions were filed, consolidated the actions.  On March 27, 2009, the state court issued a stipulated order dismissing all claims between AWB, Durbano, and Kings Cross.

On May 1, 2009, the Utah Commissioner of Financial Institutions took over AWB and appointed the FDIC as AWB's receiver.  The FDIC accepted the appointment.  On May 21, 2009,

the parties had a conference with the state court judge regarding the FDIC's appointment. The state court granted a 90-day stay of the proceedings. The parties, however, agreed to have the state court issue its ruling on pending motions that the court had heard on April 9, 2009, which included two motions for partial summary judgment by Northstar, a motion for partial summary judgment by AWB and Durbano, and a Rule 56(f) motion filed by Northstar. The state court issued its ruling on May 27, 2009, denying summary judgment because of the existence of disputed material facts and granting Northstar's Rule 56(f) motion to conduct further discovery on a certain issue.

During the stay of proceedings, on June 5, 2009, the FDIC removed the lawsuit to federal court. On June 15, 2009, the FDIC provided notice to Northstar of its right to file a proof of claim with the FDIC under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"). On August 5, 2009, Northstar filed its proof of claim with the FDIC. The FDIC has 180 days from that date--or until February 1, 2010--to consider Northstar's claims.

Northstar and Durbano proceeded to finalize the briefing on pending motions for partial summary judgment that had been filed in state court after the state court took the other motions under advisement but prior to the FDIC's removal of the action to this court. The FDIC, however, did not finalize its briefing of those motions for partial summary judgment. Rather, the FDIC filed the present motion for a stay of the proceedings until the conclusion of its 180-day administrative review of Northstar's claim.

## DISCUSSION

### FDIC's Motion for Stay Pending Compliance with or Exhaustion of the Administrative Process Required by FIRREA

The FDIC asks the court to enter an order staying all proceedings in this matter until the

earlier of February 1, 2010, or the date on which the FDIC reaches a determination on the administrative claim Northstar submitted to the FDIC.   Northstar argues that there is nothing in FIRREA that prohibits it from continuing its lawsuit against the FDIC.

FIRREA sets forth the procedure for the review and payment of a claim by the FDIC after it is appointed as a receiver for a failed financial institution.  Under 12 U.S.C. § 1821(d)(3)(B)(i), the FDIC is required to provide notice to creditors to present their claims within 90 days.  Pursuant to FIRREA, "any claim against a failed bank must be submitted as an administrative claim before it may become grounds for a lawsuit." *Silva Bros. Investment, Inc. v. FDIC*, 894 F. Supp. 42, 44 (D. Mass. 1995).  The requirement for submitting an administrative claim under FIRREA applies to all claims "seeking payment from the assets of the affected institution; all suits seeking satisfaction from those assets; and all actions for the determination of rights vis-a-vis those assets." *Marquis v. FDIC*, 965 F.2d 1148, 1152 (1st Cir. 1992).

The FDIC then has 180 days from the date a claim is filed to allow or disallow the claim. 12 U.S.C. § 1821(d)(5)(A)(ii).  Sections 1821(d)(13)(D) and 1821(d)(6)(A) provide that during the 180-day period in which the FDIC decides whether to allow or disallow a claim, the court does not have jurisdiction over:  "(i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or (ii) any claim relating to any act or omission of such institution or the Corporation as receiver." *Id.* § 1821(d)(13)(D).

Once the FDIC disallows a claim or the 180-day period expires, the claimant may seek administrative review "'or file suit on such claim (or continue an action commenced before the

appointment of the receiver) in the district . . . court of the United States for the district within which the depository institution's principal place of business is located." *Id.* § 1821(d)(6)(A).

The Tenth Circuit has determined that the administrative requirements of FIRREA apply to claims pending at the time of the appointment of the receiver. *RTC v. Mustang Partners*, 946 F.2d 103, 106 (10th Cir. 1991). Similarly, the First Circuit has held that "participation in the administrative claims process [is] mandatory for all parties asserting claims against failed institutions, regardless of whether the lawsuits were instituted prior to the appointment of the receiver." *Marquis*, 965 F.2d at 1151.

The Tenth Circuit, however, in *Marc Development v. FDIC*, 992 F.2d 1503 (10th Cir. 1993), held that the language in *Mustang Partners* requiring creditors to participate in the administrative process "does not require exhaustion of the administrative claims process in order to preserve a claimant's right to continue pursuing a pending lawsuit involving the same claim." But, the Tenth Circuit granted rehearing of the *Marc Development* decision in banc. *Marc Development v. FDIC*, 12 F.3d 948, 948 (10th Cir. 1993). The Tenth Circuit's in banc decision held that a settlement between the parties had rendered the appeal moot and, under the circumstances, it was appropriate to vacate the previously reported opinions. *Id.* The court stated that vacating the decisions "'clears the path for future relitigation of the issues between the parties and eliminates a judgment, review of which was prevented through happenstance' and prevents the moot judgment 'from spawning any legal consequences.'" *Id.* (quoting *United States v. Munsingwear*, 340 U.S. 36, 40-41 (1950)). Accordingly, the first *Marc Development* decision is not binding Tenth Circuit precedent.

There appears to be a split among circuits regarding the exhaustion requirement under

FIRREA. A majority of circuit courts have required exhaustion of the administrative remedy before the action may continue. *Brady Dev. Co. v. RTC*, 991 F.2d 998, 1003 (4th Cir. 1994); *Carney v. RTC*, 19 F.3d 950, 956 (5th Cir. 1994); *Bueford v. RTC*, 991 F.2d 481, 484 (8th Cir. 1993); *Intercontinental Travel Mktg. v. FDIC,* 45 F.3d 1278, 1283 (9th Cir. 1994). But, even circuits that have not required exhaustion of administrative remedies before continuing a pending action have adopted approaches that are harmonious with staying the action pending the administrative determination if the FDIC does not unduly pursue the litigation process before seeking the stay.

In opposing the stay, Northstar relies on Section 1821(d)(5)(F)(ii), which states that "the filing of a claim with the receiver shall not prejudice any right of the claimant to continue any action which was filed before the appointment of a receiver." 12 U.S.C. § 1821(d)(5)(F)(ii). Northstar asserts that this provision contemplates that lawsuits predating the receivership are intended to continue without prejudice except for the optional 90-day stay provided by subsection (d)(12). Such a focus, however, ignores Section 1821(d)(6)(A) which provides the timing for continuing a pre-receivership action. The FDIC is not trying to divest the court of jurisdiction. The FDIC's position is that FIRREA more properly provides for the proper timing of events. Under FIRREA, a claimant lacks jurisdiction to bring a claim until after the administrative exhaustion or, in the case of a pre-receivership claim, such as this case, a claimant can continue the action after the administrative exhaustion. *Id.* § 1821(d)(6)(A). The timing provided for in Section 1821(d)(6)(A) does not conflict with Section 1821(d)(5)(F)(ii).

Moreover, for claims that are not filed pre-receivership, the claimant first brings an administrative claim and, if the claim is disallowed by the receiver, the claimant may then bring a

6

judicial action.  Section 1821(d)(5)(F)(ii) provides comparable treatment for claimants whose actions have been filed pre-receivership.  The provision allows for the continuation of an action, so that after such a claimant has taken advantage of the administrative process, if the claim is disallowed by the receiver, the claimant will then have the opportunity to continue its pre-receivership claim judicially.  By allowing this continuation of the judicial claim after the administrative review, the plaintiff's pre-receivership claim is not prejudiced and the plaintiff is in the same position as a claimant who files a claim after receivership.

Northstar also urges the court to adopt the standard employed by the Eleventh Circuit. The Eleventh Circuit has held that the FDIC must satisfy two conditions to require the plaintiff in a pre-receivership lawsuit to exhaust its administrative remedies before continuing the action: (1) the FDIC must "'insist on the use of the administrative process,' by staying the action and informing the plaintiff that it is doing so pending exhaustion of the administrative remedies," and (2) the FDIC must do so during the 90-day stay provided for in § 1821(d)(12).  *FDIC v. LaCentra Trucking, Inc.*, 157 F.3d 1292, 1303 (11th Cir. 1998).

The Eleventh Circuit, however, appears to be the only circuit to require the requested stay to occur during the initial 90-day stay period.  Other circuit court's have recognized that in the case of a lawsuit filed pre-receivership, the court may "in its discretion – and ordinarily should – stay proceedings . . . so as to permit exhaustion of the mandatory administrative claims review process." *Marquis v. FDIC*, 965 F.2d 1148, 1155 (1st Cir. 1992).  Most courts look only to whether the motion to stay is brought within a reasonable time.

In addition, *LaCentra* and the other cases cited by Northstar all deal with whether a court has jurisdiction over a claim where a claimant has not exhausted the administrative remedies, not

whether an action should be stayed pending exhaustion. *LaCentra*, 157 F.3d at 1302-03; *Superior Bank, FSB v. Boyd (in re Lewis)*, 398 F.3d 735, 745 (6th Cir. 2005). As the FDIC pointed out in its initial brief, both *LaCentra* and *Lewis* are factually distinguishable because the receiver in those cases did not seek to have the plaintiff pursue administrative remedies. Instead, the receivers allowed the litigation to proceed to the eve of trial in one and to final judgment in the other. Thus, these cases recognizing the court's continuing jurisdiction do not meaningfully answer the question of whether both the administrative and judicial actions should be pursued simultaneously.

In this case, the parties all agree that the court maintains jurisdiction over the case during the administrative process because such jurisdiction allows the case to continue at the end of the 180-days or when the claim is disallowed, whichever is earlier. While the 90-day stay expired on August 4, 2009, and the FDIC did not move for the stay until September 14, 2009, the FDIC did not unreasonably delay in asserting its right to make an initial administrative determination before proceeding with the current litigation. Moreover, nothing significant occurred in the litigation during those 40 days. In addition, the FDIC has done nothing inconsistent with requesting a stay in this case. Since it entered this action, it has done nothing to advance the litigation. While the other parties completed briefing on prior motions for summary judgment, the FDIC pursued its motion for stay.

Northstar contends that it will be "most certainly" prejudiced if the lawsuit is halted for 180 days. The court, however, finds such generalized assertions unpersuasive. Just after the FDIC entered the case, the state court ruled on a series of motions, one of which was allowing Northstar to conduct further discovery. It is unclear whether such discovery has taken place. In

8

addition, the pending motions for summary judgment are only motions for partial summary judgment and each need to be heard and decided prior to trial. Moreover, Northstar recently moved to amend its Complaint to add new claims. Both that motion and a recently filed motion for summary judgment filed by Defendant Durbano need to be briefed and heard. The court concludes that the case is not at a stage where a 60-day delay will be prejudicial to any of the parties.

No circuit court has held that a stay pending administrative determination is inappropriate. And most circuits have held that administrative and judicial remedies should not continue simultaneously when the FDIC timely requests a stay. The FDIC timely requested a stay in this case. Because the exhaustion scheme mandated by FIRREA is reasonably brief and it provides for continuing jurisdiction for pre-receivership case, the court finds no factual or legal prejudice in granting the FDIC's requested stay.

While Durbano agrees that the claims between Northstar and the FDIC should be stayed under FIRREA, he asserts that the claims between himself and Northstar should be allowed to proceed. Durbano contends that Northstar's claims against him do not require the court to seek a determination of the rights affecting the assets of AWB. The FDIC claims that Durbano's liability is necessarily intertwined with the FDIC's liability. Northstar agrees with the FDIC that Durbano's liability is inextricably intertwined with the liability of AWB. Accordingly, Northstar's position is that the court should deny the stay as to all parties or grant it as to all parties.

In its Complaint, Northstar alleges that Durbano, as trustee at the trustee's sale, did not deliver the sale proceeds in excess of the amount that Kings Cross owed AWB under the loan in

violation of Utah Code Ann. §§ 57-1-27 and 57-1-29. As a result of Durbano's alleged failure to comply with the trust deed statute, Northstar claims that it is entitled, as a junior lienholder, to a judgment against AWB and Durbano for $290,076.94.

On November 6, 2009, Durbano filed a motion for summary judgment arguing that because AWB purchased the property at the trustee's sale by credit bid, Durbano never received any "proceeds," contrary to Northstar's allegation in the Complaint in connection with its claims under Utah's trust deed statute. Durbano contends that any funds that Northstar claims it is owed are being held by AWB, which are now within the control of the FDIC. Durbano requests that the court allow him to move forward and be given the opportunity to defend the claims under the Utah trust deed statute while Northstar exhausts the administrative claims process with the FDIC.

But the plain language of Northstar's claims against Durbano necessarily seeks a determination of rights with respect to AWB's assets. Durbano's assertion that he never received any proceeds does not change the fact that Nothstar's claims implicate both AWB and Durbano. As a co-defendant in the action, the FDIC should be allowed to participate in the briefing of Durbano's motion for summary judgment, whether in support of it or in opposition to it. Accordingly, the court finds that it would be inappropriate for the case to proceed in the absence of the FDIC. The court, therefore, concludes that the entire action should be stayed until February 1, 2010, or the date on which Northstar's claim is disallowed, whichever is earlier.

## CONCLUSION

Based on the above reasoning, the FDIC's Motion for Stay Pending Compliance With or Exhaustion of the Administrative Process Required by FIRREA is GRANTED. The case is stayed until February 1, 2010, or the FDIC's disallowance of Northstar's claim, whichever is

earlier. Accordingly, the hearing currently scheduled for December 14, 2009, at 3:00 p.m. is VACATED.

DATED this 30th day of November, 2009.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge